Citation Nr: 1706027 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 12-12 655 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a cervical spine/neck disorder.

2. Entitlement to a disability rating in excess of 0 percent for a left wrist ligament tear.

3. Entitlement to a disability rating in excess of 10 percent for a right wrist disability.

4. Entitlement to a disability rating in excess of 10 percent for a lumbar spine disability.

5. Entitlement to a disability rating in excess of 10 percent for a right ankle disability.

6. Entitlement to a disability rating in excess of 10 percent for a left foot disability.

7. Entitlement to a disability rating in excess of 0 percent for Gilbert's syndrome and cholelithiasis with polyp of the gallbladder.


REPRESENTATION

Appellant represented by: Robin E. Hood, Attorney


WITNESS AT HEARING ON APPEAL

Appellant 


ATTORNEY FOR THE BOARD

L. Cramp, Counsel


INTRODUCTION

The appellant is a veteran (the Veteran) who had active duty service from February 1992 to May 1998. 

This appeal comes before the Board of Veterans' Appeals (Board) from a May 2010 rating decision of the RO in St. Petersburg, Florida.

In December 2016, the Veteran presented testimony at a Board hearing, chaired via videoconference by the undersigned Veterans Law Judge and accepted such hearing in lieu of an in-person hearing before a Member of the Board. See 38 C.F.R. § 20.700(e) (2016). A transcript of the hearing is associated with the claims file.

In August 2015, the Board remanded these issues for additional evidentiary development as well as a claim of entitlement to service connection for ulcerative colitis. The ulcerative colitis claim was granted in full by the RO and the appeal as to that issue is accordingly resolved. The remainder of the appeal has since been returned to the Board for further appellate action. The Board also denied service connection for a bilateral hip disorder, an issue on appeal at that time. The Board's decision with respect to that matter is final. See 38 C.F.R. § 20.1100 (2016). 

The Board has considered whether the issue of entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU) is a component of the increased rating claim in accordance with Rice v. Shinseki, 22 Vet. App. 447 (2009); however, the Veteran has not asserted that his service connected left wrist disability has rendered him unable to secure or follow a substantially gainful occupation.

The Board acknowledges receipt of the Veteran's Notice of Disagreement with the initial rating assigned for his service connected ulcerative colitis. However, the RO has also acknowledged receipt of this document and has entered the appeal in VA's appeals tracking system. At this time, no additional action is necessary to comply with Manlincon v. West, 12 Vet. App. 238 (1999). 

The Veteran submitted additional medical evidence after the most recent Supplemental Statement of the Case. In February 2017, he waived his right to have that evidence considered in the first instance by the agency of original jurisdiction. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. A current cervical spine/neck disorder is related to service an injury in service.

2. For the entire period of this appeal, the Veteran's left wrist ligament tear has been manifested by painful motion with range of motion with dorsiflexion which exceeds 15 degrees and palmar flexion in excess of the point in line with the forearm.

3. On the record of the Board hearing, the Veteran withdrew his appeal regarding the rating for his right wrist disability, lumbar spine disability, right ankle disability, left foot disability, and bowel disability.


CONCLUSIONS OF LAW

1. A cervical spine/neck disorder was incurred in wartime service. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2016).

2. The criteria for a disability rating of 10 percent for the left wrist ligament tear have been met; the criteria for a rating higher than 10 percent have not been met for any period. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5215 (2016).

3. The criteria for withdrawal of an appeal by the appellant have been met regarding the claim of entitlement to an increased disability rating for a right wrist disability. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2016).

4. The criteria for withdrawal of an appeal by the appellant have been met regarding the claim of entitlement to an increased disability rating for a lumbar spine disability. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2016).

5. The criteria for withdrawal of an appeal by the appellant have been met regarding the claim of entitlement to an increased disability rating for a right ankle disability. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2016).

6. The criteria for withdrawal of an appeal by the appellant have been met regarding the claim of entitlement to an increased disability rating for a left foot disability. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2016).

7. The criteria for withdrawal of an appeal by the appellant have been met regarding the claim of entitlement to an increased disability rating for Gilbert's syndrome and cholelithiasis with polyp of the gallbladder. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Withdrawal of Appeal

On the record of the December 2016 Board hearing, the Veteran indicated that he wished to withdraw his appeal regarding several issues of which an appeal had been perfected. These included the ratings for his right wrist disability, lumbar spine disability, right ankle disability, left foot disability, and bowel disability. 

An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2016). Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. 

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2014). 

As the appeal of the rating for the right wrist disability, lumbar spine disability, right ankle disability, left foot disability, and bowel disability, has been withdrawn, the Board finds that dismissal is appropriate. 

Service connection-Cervical Spine

The Veteran is seeking service connection for a cervical spine/neck disorder on the basis that such disorder is related to an injury in service.

VA law provides that, for disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, or other than a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation, except if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs. 38 U.S.C.A. §§ 1110, 1131 (West 2014). 

Entitlement to service connection on a direct basis requires (1) evidence of current nonservice-connected disability; (2) evidence of in-service incurrence or aggravation of disease or injury; and (3) evidence of a nexus between the in-service disease or injury and the current nonservice-connected disability. 38 C.F.R. § 3.303(a); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

For specific enumerated diseases designated as "chronic" there is a presumption that such chronic disease was incurred in or aggravated by service even though there is no evidence of such chronic disease during the period of service. This presumption applies to veterans who served 90 days or more during a period of war or after December 31, 1946. In order for the presumption to attach, the disease must have become manifest to a degree of 10 percent or more within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307(a)(3), 3.309(a).

Where one of the enumerated chronic diseases is shown to be chronic in service (or within the presumptive period under § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. 38 C.F.R. § 3.303(b).

Presumptive service connection for the specified chronic diseases may alternatively be established by way of continuity of symptomatology under 38 C.F.R. § 3.303(b). Continuity of symptomatology may be shown by demonstrating "(1) that one of the enumerated diseases was noted during service or within the presumptive period; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology." Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); see also Davidson v. Shinseki, 581 F.3d 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board"). However, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Arthritis is included among the enumerated chronic diseases. Arthritis is primarily rated on the basis of limitation of motion. Therefore, the rating provisions addressing limitation of motion of specific joints must be considered in determining whether arthritis is manifest to a degree of 10 percent or more. See 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2016).

In order for cervical spine arthritis to have become manifest to a degree of 10 percent, there must be evidence to substantiate that (1) forward flexion of the cervical spine is limited to 40 degrees, or (2) that combined range of motion of the cervical spine is limited to 335 degrees, or (3) there must be a diagnosis "established by X-ray findings" and "satisfactory evidence of painful motion." See 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5242 (2016).

Service treatment records reveal the Veteran was injured in a parachute landing fall in 1994. According to his account given to service treatment providers subsequent to the accident, he experienced a high-altitude collision and consequently landed in a sitting position. He reported feeling his spine compress. While in service, the Veteran was treated numerous times for complaints stemming from the accident. These included low back pain, testicular pain, and lower extremity pain. He was found to have a Grade I spondylolisthesis at L5-S1. Spondylolisthesis is defined as a forward displacement of one vertebra over another. See Dorland's Illustrated Medical Dictionary 1779 (31st ed. 2007).

At no time during service was the Veteran treated for neck complaints or diagnosed with a cervical spine or neck disorder. When examined at service separation in January 1998, his neck was found to be clinically normal. 

After service, the first report of neck symptoms comes in the context of the current claim. A general examination in February 2000 included normal findings for the neck. 

The Veteran was afforded a VA examination in April 2016. The diagnosis was degenerative arthritis of the cervical spine. The examiner opined that this condition was less likely as not incurred in or caused during service. The rationale was that the military records are without complaint of a neck condition though there are multiple other joint complaints and evaluations. 

The Veteran submitted a disability benefits questionnaire completed by a private provider in November 2016. The Veteran's in-service parachute accident was noted. The diagnoses included cervical degenerative disc disease, and associated cervical sprain/strain and cervical spondylosis (degenerative joint disease). An opinion also dated in November 2016 states that the Veteran's cervical disc disease is most likely, greater than 50 percent, due to this service-related injury. The physician explained that the history presented by the Veteran is consisted with the x-ray findings which is known to progress in this manner.

There is no dispute regarding the element of a current disability. The evidence establishes a current cervical spine disability of varying diagnoses. There is also an established injury in service on the basis of which service connection has already been granted for a low back disorder. While the Veteran's neck was not symptomatic at the time of the accident, the Board acknowledges that a significant injury was sustained in the lower spine. The only matter in dispute is whether the in-service injury caused the subsequent onset of cervical spine arthritis or chronic strain/sprain. 

The probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board. See Guerrieri v. Brown, 4 Vet. App. 467, 470-471 (1993). The Board may appropriately favor the opinion of one competent medical authority over another. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). However, the Board may not reject medical opinions based on its own medical judgment. Obert v. Brown, 5 Vet. App. 30 (1993); see also Colvin v. Derwinski, 1 Vet. App 171 (1991). 

Here, the Board finds that neither the April 2016 nor the December 2012 opinion is particularly detailed or well-explained. The VA opinion is based essentially on the lack of complaints in service regarding the neck. This appears to be generally acknowledged. The Veteran testified that he experienced gradual onset of neck pain over the years. The private opinion is consistent with these facts in that it acknowledges a gradual onset of degenerative disc disease and states that this gradual onset is consistent with the disease, i.e., "is known to progress in this manner." Accordingly, while the reasoning of the private physician is minimal, the Board finds the private opinion to be adequate, in that it is consistent with the facts. 

The Board finds that the evidence in favor of a nexus between the current cervical degenerative disc disease and service has attained relative equipoise with the evidence against the claim. With resolution of all reasonable doubt in favor of the claim, the Board concludes that service connection for a cervical spine disorder is warranted. This represents a grant of the full benefit sought on appeal with respect to this issue. 

Increased Rating-Left Wrist

Disability ratings are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two ratings are potentially applicable, the higher rating will be assigned if the disability more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. See 38 C.F.R. § 4.3.

A disability rating may require re-evaluation in accordance with changes in a veteran's condition. Thus, it is essential that the disability be considered in the context of the entire recorded history when determining the level of current impairment. See 38 C.F.R. § 4.1. See also Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Nevertheless, where a veteran is appealing the rating for an already established service-connected condition, his present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when an appeal is based on the assignment of an initial rating for a disability, following an initial award of service connection for this disability, the rule articulated in Francisco does not apply. Fenderson v. West, 12 Vet. App. 119 (1999). Instead, the evaluation must be based on the overall recorded history of a disability, giving equal weight to past and present medical reports. Id. Staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection of parts of the musculoskeletal system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. The functional loss may be due to absence of part, or all, of the necessary bones, joints, and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995).

In an April 2000 rating decision, the RO granted service connection for a left wrist ligament tear, assigned a noncompensable disability rating under Diagnostic Code 5215, and made that award effective on May 30, 1998. The current appeal arises from an increased rating claim received at the RO in October 2009. 

Diagnostic Code 5215 provides ratings specifically for the wrist joint. A maximum 10 percent rating is provided for limitation of dorsiflexion of the wrist, with dorsiflexion limited to less than 15 degrees; a maximum 10 percent rating is provided for limitation of palmar flexion, with palmar flexion limited in line with the forearm, whether the dominant or minor wrist. 38 C.F.R. § 4.71a, Diagnostic Code 5215.

The Veteran was afforded a VA examination in April 2010. He reported increased pain and loss of motion. Testing revealed no deformity, giving way, instability, stiffness, weakness, incoordination, decreased speed of joint motion, episodes of dislocation or subluxation, or locking episodes. Left dorsiflexion was measured from 0 to 70 degrees. Left palmar flexion was measured from 0 to 80 degrees. Left radial deviation was measured from 0 to 20 degrees. Left ulnar deviation was measured from 0 to 4 degrees. There was no objective evidence of pain following repetitive motion. There were no additional limitations after three repetitions of range of motion. The effect on occupational activities was weakness or fatigue, and pain. There was moderate impact on exercise and sports, mild impact on chores, shopping, dressing, toileting, grooming, and driving, but no impact on recreation, traveling, feeding, and bathing. The current severity of the conditions was mild based on subjective and clinical findings.

VA treatment reports, such as in February 2015, note onset of numbness of the left arm which the Veteran reported might be associated with his neck (Virtual VA record 12/22/2016, p. 251). 

The report of an April 2016 VA examination reveals a diagnosis of degenerative arthritis. However, on testing, all ranges of motion were normal. Palmar flexion was measured from 0 to 80 degrees. Dorsiflexion was measured from 0 to 70 degrees. Ulnar deviation was measured from 0 to 45 degrees. Radial deviation was measured from 0 to 20 degrees. There was pain associated with motion, but the pain did not contribute to functional loss. There was no additional loss of motion after 3 repetitions. The Veteran was not experiencing a symptom flare at the time of the examination. Muscle strength was normal on flexion and extension. There was no muscle atrophy. There was no ankylosis. The left wrist disability did not impact his ability to perform any type of occupational task (such as standing, walking, lifting, sitting, etc. Current severity was assessed as mild based on mild arthritis by x-rays. The examiner opined that the Veteran's bilateral wrist pain appeared to be more from carpal tunnel syndrome than from chronic arthritis. 

The Veteran submitted a report from a private physician from an examination conducted in November 2016. That report reflects complaint of a chronic history of wrist pain with constant radiation, muscle atrophy, and paresthesia-like symptomology, with decreased strength, tone, and proprioception in the left wrist hand distribution. There were frequent flare-ups 3 to 5 times a day. There was decreased sensation, numbing, and tingling, with episodes of sharp pain. There were episodes of decreased mobility secondary to discomfort. There was atrophy of the hand muscles, decreased strength, and decreased activity. Palmar flexion was measured from 0 to 40 degrees. Dorsiflexion was measured from 0 to 30 degrees. Ulnar deviation was measured from 0 to 20 degrees. Radial deviation was measured from 0 to 10 degrees. After repetition, palmar flexion was measured from 0 to 35 degrees. Dorsiflexion was measured from 0 to 25 degrees. Ulnar deviation was measured from 0 to 20 degrees. Radial deviation was measured from 0 to 10 degrees. Motion was accompanied by incoordination, impaired ability to execute skilled movements smoothly, pain on movement, atrophy of disuse, and disturbance of locomotion. Strength was 3/5 on flexion and extension. X-rays showed no arthritis. The Veteran had difficulty with grasping objects, turning and twisting the wrist, lifting, and with repetitive hand movements and finger manipulation. The examiner stated that the ligament tear is the primary reason for decreased range of motion. The examiner also stated "since this is a chronic issue, I believe there are arthritis changes associated, and also atrophy associated with nerve damage."

The Board notes initially that many of the symptoms described in the November 2016 report are distinctly neurological in nature. These include paresthesia-like symptomatology, numbing, tingling, and decreased sensation. This is consistent with the description of the April 2016 VA examiner of symptoms of carpal tunnel syndrome. VA outpatient records also contain a running diagnosis of cervical radiculopathy. To the extent the neurological symptoms may be attributed to the cervical spine disability, this will be addressed when the RO implements the Board's grant of service connection for that disability. Service connection is not in effect for carpal tunnel syndrome or any other neurological disorder of the left upper extremity. The service-connected condition at issue here is a "left wrist ligament tear." The rating criteria for musculoskeletal disabilities (38 C.F.R. § 4.71a) do not contemplate neurological impairment. See also 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, 8 Vet. App. at 206-07. Therefore, the Board finds that neurological impairment of the left wrist is not a component of the service-connected disability. 

Notwithstanding the Board's finding that the service-connected disability does not include a neurological disorder, certain symptomatology, such as painful and limited motion of the left wrist, weakness, excess fatigability, and incoordination, cannot be distinguished from the service-connected disability based on the medical evidence of record. Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam), citing Mitchem v. Brown, 9 Vet. App. 136, 140 (1996) (the Board is precluded from differentiating between symptomatology attributed to a non service-connected disability and a service-connected disability in the absence of medical evidence which does so). Accordingly, the Board has considered these symptoms in rating the service-connected disability. 

After a review of all of the evidence, the Board finds that a rating of 10 percent is warranted for the left wrist ligament tear based on the uncontested presence of painful limited motion. See 38 C.F.R. § 4.59 (it is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint). 

However, the Board also finds that a rating in excess of 10 percent is not warranted for the left wrist, as, in no instance has dorsiflexion been limited to less than 15 degrees or has palmar flexion been limited in line with the forearm. Thus, the range of motion testing does not meet the requirements of a 10 percent evaluation, let alone a higher evaluation. Without consideration of the functional impairment the Veteran has cited, a compensable evaluation could not be justified.

As noted above, the Board acknowledges the pain experienced by the Veteran, as well as the weakness and incoordination described on one examination. The Veteran is competent to report the experience of pain. However, the 10 percent rating fully contemplates the presence of pain. Although pain may cause a functional loss, pain itself does not constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011). Pain must affect some aspect of the normal working movements of the body such as excursion, strength, speed, coordination, and endurance, in order to constitute functional loss. Id. at 38; see 38 C.F.R. § 4.40. 

While the provisions of 38 C.F.R. § 4.59 establish that the Veteran is entitled to at least the minimum compensable evaluation for his symptoms, evaluations in excess of the minimum compensable rating must be based on demonstrated functional impairment. 

The Board acknowledges the conflicting evidence regarding arthritis in the left wrist. However, even assuming arthritis is attributable to the service-connected ligament tear, there is no additional rating contemplated for the presence of arthritis. A noncompensable disability under Diagnostic Code 5215 is a prerequisite for compensation under the second or third parts of Diagnostic Code 5003. Only when arthritic pain does not cause limitation of motion, or causes a limitation of motion that does not rise to a compensable level, will a 10 percent rating under Diagnostic Code 5003 be appropriate. 

In sum, service connection is not in effect for a neurological disorder of the left wrist. The service-connected disability is limited to a ligament tear, which is a musculoskeletal disability. The Veteran's service-connected left wrist ligament tear is manifested by painful motion, weakness, fatigue, and incoordination; however, in no instance has dorsiflexion been limited to less than 15 degrees or has palmar flexion been limited in line with the forearm. To the extent any higher level of compensation is sought, the preponderance of the evidence is against the claim. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against a rating in excess of 10 percent, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

Extraschedular Consideration

The Board has considered whether an extraschedular evaluation is warranted for the issues on appeal. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2016). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

The Board finds that the first Thun element is not satisfied here. The Veteran's service-connected left wrist ligament tear is manifested by signs and symptoms such as pain, weakness, fatigability, and incoordination, which impairs his ability to lift and manipulate objects. These signs and symptoms, and their resulting impairment, are fully contemplated by the rating schedule. The diagnostic codes in the rating schedule corresponding to disabilities of the wrist provide disability ratings on the basis of limited motion. For all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell, 25 Vet. App. at 37. For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. Given the variety of ways in which the rating schedule contemplates functional loss for musculoskeletal disabilities, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture. In short, there is nothing exceptional or unusual about the Veteran's disability because the rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet. App. at 115.

In this regard and consistent with the reasoning presented above, the Board finds that the rating schedule is adequate, even in regard to the collective and combined effect of all of the Veteran's service connected disabilities, and that referral for extraschedular consideration is not warranted under the circumstances of this case. Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. Aug. 6, 2014). In so finding, the Board notes that the Veteran has not identified or asserted that the collective and combined effect of all of the Veteran's service connected disabilities have rendered the rating schedule for the wrist inadequate. See Yancy v. McDonald, 27 Vet. App. 484, 495 (2016) (the Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities).

Consideration of Special Monthly Compensation

The Board has considered whether the Veteran's disability picture warrants any level of Special Monthly Compensation (SMC). See 38 U.S.C.A. §§ 1114; 38 C.F.R. §§ 3.350, 3.352. 

The Veteran is currently not in receipt of any level of SMC. The evidence demonstrates that he does not have such impairment due to service-connected disabilities as approximates loss of use of either upper extremity. 38 U.S.C. § 1114(k), (m), (n), (o); 38 CFR § 3.350(a), (c), (d), (e). He has also not been found to be housebound or in need of the aid and attendance of another. 38 U.S.C. § 1114(l), (s), (r) 38 CFR § 3.350(b), (i), (h). His combined disability rating during the period of the rating claim on appeal is 60 percent, and he has no single disability rated at higher than 30 percent. 38 U.S.C. § 1114(p), (s) 38 CFR § 3.350(f), (i). Under the circumstances here, the Board concludes that no additional SMC is warranted. 

Duties to Notify and Assist

As the Board is granting the service connection for a cervical spine disorder, that claim is substantiated, and there are no further VCAA duties. Wensch v. Principi, 15 Vet App 362, 367-368 (2001); see also 38 U.S.C.A. § 5103A(a)(2) (Secretary not required to provide assistance "if no reasonable possibility exists that such assistance would aid in substantiating the claim"); VAOPGCPREC 5-2004 (the notice and duty to assist provisions of the VCAA do not apply to claims that could not be substantiated through such notice and assistance).

VA's duty to notify was satisfied by letters in December 2009, January 2010, and March 2016. 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

The RO has obtained pertinent medical records including the service treatment records, VA outpatient treatment reports, and private treatment reports identified by the Veteran. The Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the left wrist rating claim that has not been obtained. The RO has also obtained a thorough medical examination regarding the rating claim, and the Veteran has submitted a private evaluation, which has been considered. 

As noted above, this appeal involves a remand by the Board for additional evidentiary development. A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). While substantial compliance is required, strict compliance is not. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) citing Dyment v. West, 13 Vet. App. 141, 146-47 (1999). In this case, the RO substantially complied with the Board's remand instructions by affording the Veteran an opportunity to submit or identify additional evidence, and by scheduling an examination to evaluate his left wrist claim. 

When conducting a hearing, a VA hearing officer, to include a Veterans Law Judge, must suggest that a claimant submit evidence on any issue material to substantiating the claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record. See Bryant v. Shinseki, 23 Vet. App. 488 (2010); 38 C.F.R. § 3.103 (2016). The hearing officer also must suggest the submission of evidence when testimony during the hearing indicates that it exists (or could be reduced to writing) but is not of record. 

Here, during the Board hearing, the Veteran was informed as to the basis for the RO's denial of his claims, and he was informed of the information and evidence necessary to substantiate each claim. Moreover, the file was left open for 30 days in order to supplement the record. Such actions supplement the VCAA and comply with 38 C.F.R. § 3.103.


ORDER

Service connection for a cervical spine/neck disorder is granted.

A disability rating of 10 percent, but not higher, for the left wrist ligament tear, is granted.

The claim of entitlement to a disability rating in excess of 10 percent for a right wrist disability is dismissed.

The claim of entitlement to a disability rating in excess of 10 percent for a lumbar spine disability is dismissed.

The claim of entitlement to a disability rating in excess of 10 percent for a right ankle disability is dismissed.

The claim of entitlement to a disability rating in excess of 10 percent for a left foot disability is dismissed.

The claim of entitlement to a disability rating in excess of 10 percent for Gilbert's syndrome and cholelithiasis with polyp of the gallbladder is dismissed.




____________________________________________
JONATHAN B. KRAMER 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs